UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv343-RJC-DCK

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) |
| | ) ORDER |
| GORDON LEE MILLER, | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on the government's motion for summary judgment. (Doc. No. 6). For the reasons set forth below, the Court will **GRANT** the government's motion.

## I. BACKGROUND

The government filed its amended complaint in this action on August 11, 2009. It verified service of process upon defendant on September 14, 2009. Defendant filed an affidavit captioned "Denial of Corporate Existence" (Doc. No. 5) on September 22, 2009, which purported to preclude the government and this Court from continuing this action because of defendant's alleged status as a "secured party" and because of "the dishonor and fraud, misrepresenting the statu[t]es / codes other than the United States." (Doc. No. 5 at 1). In construing plaintiff's filing liberally, the Court deems this affidavit a timely answer to the government's amended complaint. Thus, default judgment is inappropriate, and the Court will resolve the issues presented on the government's summary judgment motion.

The government's uncontroverted facts are alleged as follows:

"On May 21, 2008, Defendant Gordon Lee Miller caused to be filed a false and fraudulent "UCC Financing Statement Amendment" . . . under the Initial Financing Statement File # 2005-2131508-47 with the Kentucky Secretary of State.
On July 15, 2008, Defendant Gordon Lee Miller caused to be filed a false and fraudulent "UCC Financing Statement Amendment" . . . in the office of the Register

of Deeds, Cleveland County, North Carolina, recorded in Book 1557 on page 444.

On October 6, 2008, Defendant Miller filed a "Writ in the Nature of Discovery-3 Request of Debt Validation Assessment" which included as an attachment the "False UCC Financing Statement." . . . On October 8, 2008, [this Court] entered a text-only order denying Defendant Miller's writ as the motion was without basis in law.

On October 22, 2008, [this Court] entered a Judgment in the criminal case of <u>United States v. Gordon Lee Miller</u>, Case No. 3:07CR59-RJC-1 (W.D.N.C.), sentencing Defendant Miller to seventy-two (72) months imprisonment based upon his convictions of unlawful possession of a firearm by convicted felon, in violation of 18 U.S.C. § 922(g)(1). . . .

On February 18, 2009, following his conviction and while incarcerated in Mecklenburg County Jail, Defendant Miller filed another "Writ in the Nature of Discovery-Request of Debt Validation Assessment" which included a "Notice of Acceptance" "Notice of Intent" as an attachment. . . . On February 27, 2009, [this Court] entered an order denying Defendant Miller's writ as this motion also failed to provide a basis in law to assess a debt against the prosecuting attorney in this case. [This Court] further stated that "[g]iven the repetitive and frivolous filings by the defendant, future similar motions will be summarily denied if they are not supported by different legal authority." [(Doc. No. 45)].

On March 3, 2009, Defendant Miller filed another "Writ in the Nature of Discovery-Request of Debt Validation Assessment" which included a "Notice of Acceptance" "Notice of Intent" as an attachment. . . .

On March 17, 2009, Defendant Miller again filed another "Writ in the Nature of Discovery-Request of Debt Validation Assessment" which included a letter to AUSA Cullen and a "Private Notice of Default." . . .

On April 21, 2009, Defendant Miller filed yet another "Writ in the Nature of Discovery-Request of Debt Validation Assessment" which again included the letter to AUSA Cullen and the "Private Notice of Default." . . .

On July 27, 2009, Defendant Miller again filed what he has labeled a "Writ in the Nature of Discovery-Request of Debt Validation Assessment Unconditional of Acceptance" which included attachments. In this document Defendant Miller makes various allegations against AUSA Cullen and asserts that "confession of judgment of the merits is warranted." Defendant Miller asserts he is the "secured party" and AUSA Cullen is an "agent." . . .

On September 3, 2009, AUSA Thomas T. Cullen received a "Notice of Fault and Opportunity to Cure and Contest Acceptance." The U.S. Attorney's Office in the Middle District of North Carolina received this document from the U.S. Attorney's Office in the Western District of North Carolina on September 11, 2009. This document was not filed in either the criminal or civil case and is attached as GE J.

On September 22, 2009, in response to the Complaint and Amended Complaint in [the instant civil action], Defendant Miller filed an "Affidavit Denial of Corporation Existence" in the civil case. . . .

On October 1, 2009, Defendant Miller served the U.S. Attorney's Office in the Middle District with an "Affidavit of Private Notice of Default."

On October 8, 2009, Defendant Miller served the U.S. Attorney's Office in the Middle District of North Carolina with a letter regarding "Conditional Acceptance (CAFV)-Private Administrative Remedy Request for Proof of Claim in the Nature of Request for Discovery" as well as an "Affidavit of Notice of Default." . . .

On November 9, 2009, Defendant Miller filed three documents labeled "Writ in the Nature of Discovery-Request of Debt Validation Assessment" "Private Notice to Agent is Notice to Principal Notice to Principal is Notice to Agent." . . .

Defendant Gordon Lee Miller, under the Initial Financing Statement File # 2005-2131508-47, prepared, executed and caused a UCC Financing Statement Amendment to be filed with the Kentucky Secretary of State, on May 21, 2008 and with the office of the Register of Deeds, Cleveland County, North Carolina, on July 15, 2008, recorded in Book 1557 on page 444. . . . He falsely and fraudulently filed numerous related documents including [those mentioned above]. AUSA Cullen has reviewed the "False UCC Financing Statement" and the related documents Defendant Miller has filed against him and AUSA Cullen has declared them all to be false. See [(Doc. No. 7-2).]

An examination of the "False UCC Financing Statement" reveals that it was filed against the prosecutor, AUSA Thomas T. Cullen, who was involved in Defendant Miller's trial and incarceration. . . . All actions that AUSA Thomas T. Cullen took with regard to Defendant Miller were actions within the scope of his federal duties and in the performance of his federal duties and he is not indebted to Defendant Miller. . . .

The "False UCC Financing Statement" . . . lists "Gordon Lee Miller" as the filer. The "False UCC Financing Statement purports to create a liability "for the Release of Interest in Bond and collateral, Partial Assignment/Release in the amount of $180,000,000.00, account no. 3:07CR59-C, 3:07-CR-00059 RJC for use as 'Full Discharge of Payment'" against AUSA Thomas T. Cullen, United States Attorney's Office, Western District of North Carolina. Defendant Miller has filed numerous similar and related documents requesting a "validation of debt" and naming AUSA Cullen as "agent" . . . , requesting that AUSA Cullen as "agent" provide Fiduciary Tax Estate forms and Fiduciary Tax Returns . . . to Defendant, alleging that AUSA Cullen is in default . . . , and asserting that AUSA Cullen has "confessed judgment" . . . regarding the $180,000,000.00 alleged financial obligation based upon the UCC Financing Statement Amendment . . . . The "False UCC Financing Statement" is without legal or factual merit and was prepared and filed for the purpose of harassing and intimidating a federal government employee and in retaliation for acts performed by the aforementioned federal official under his authority as a United States employee charged with the investigation, enforcement and adjudication of Federal criminal statutes. . . .

Defendant Gordon Lee Miller, under the Initial Financing Statement File # 2005-2131508-47, caused to be filed a UCC Financing Statement Amendment

. . . with the Kentucky Secretary of State, on May 21, 2008 and with the office of the Register of Deeds, Cleveland County, North Carolina, on July 15, 2008, recorded in Book 1557 on page 444. Defendant Miller filed the aforementioned "False UCC Financing Statement" which constitutes misconduct and was specifically calculated to interfere with the operations of the United States Courts, the United States Department of Justice, and the enforcement of the laws of the United States, and to interrupt, hinder, harass, or impede agents, officers and employees, specifically AUSA Cullen, of the United States in the discharge of their official duties. . . .

The United States of America and its aforementioned officials, including AUSA Cullen, do not owe any financial obligation to the Defendant. The "False UCC Financing Statement" . . . is invalid and fraudulent; it is not executed in accordance with the UCC or law; and it is not signed by the party to be charged with the debt. . . .

The United States, its aforementioned officials or employees, including AUSA Cullen, individually and collectively, have never consented to the encumbering of their properties by the Defendant, and are not now, nor have they ever been, indebted to the Defendant. . . .

Defendant intended, knew or reasonably should have known when preparing, executing and/or filing the "False UCC Financing Statement" that it would be filed or caused to be filed in the Secretary of State's Office or Register of Deeds Office. Defendant filed or caused to be filed the "False UCC Financing Statement" in retaliation for acts performed by AUSA Cullen, a federal employee, under his authority as a federal prosecutor charged with the investigation, enforcement and adjudication of Federal criminal statutes. . . .

The filing of the "False UCC Financing Statement" was specifically calculated to interfere with the operations of the United States Courts and the United States Department of Justice, and the enforcement of the laws of the United States, and to interrupt, hinder, harass, or impede agents, officers and employees, including AUSA Cullen, of the United States in the discharge of their official duties. . . .

The "False UCC Financing Statement" clouds title, may cloud title, or purports to cloud title, to the property of AUSA Cullen . . . .

## II. LEGAL STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

4

and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Defendant has failed to respond to the government's motion. A failure to respond to a motion for summary judgment, however, does not automatically establish for the moving party the burden imposed upon it by Rule 56. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 415 (4th Cir. 1993). In an uncontested motion for summary judgment, the moving party's asserted facts are uncontroverted, and thus there is no genuine issue of material fact. However, the moving party must also establish "that it is 'entitled to a judgment as a matter of law.'" Id. (quoting

5

Fed. R. Civ. P. 56(c)). Thus the court, "in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id.

### A. Declaratory Judgment

Based on the uncontroverted facts, judgment is appropriate as a matter of law declaring the False UCC Financing Statement invalid, void, and without any legal effect. While the Court must draw inferences in the light most favorable to the nonmoving party, here, the only reasonable inference is that defendant filed the False UCC Financing Statement in order to harass and retaliate against AUSA Cullen for his involvement in defendant's criminal conviction. Cf. United States v. Falice, No. 1:04cv878, 2006 WL 2488391, at *5 (M.D.N.C. Aug. 25, 2006). Further, "neither state nor federal law provides that a citizen may file a lien on the property of a public official for alleged wrongs committed by that official against a citizen without the existence of a judgment in the citizen's favor." United States v. Barker, 19 F. Supp. 2d 1380, 1384 (S.D. Ga. 1998). Since the Court finds that the False UCC Financing Statement was filed in bad faith and that it is not based on any genuine commercial obligation owed to defendant, the Court will declare the statement invalid, void, and without any legal effect. See Falice, 2006 WL 2488391, at *5 n.4 (collecting cases holding the same).

### B. Injunctions against further filing

The government also seeks injunctive relief. It seeks for defendant to be permanently enjoined from filing further UCC Financing Statements, liens, and similar or related documents purporting to create a financial obligation against AUSA Cullen or against any officers and employees of the United States of America. The government also seeks an injunction against

defendant that prohibits the Federal and North Carolina Clerks of Court and North Carolina County Registers of Deeds from filing such liens and documents prepared or filed by defendant purporting to create a financial obligation, without appropriate court order.

To obtain a permanent injunction, the "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (citing eBay v. MercExchange, L.L.C., 126 S. Ct. 1837, at 1839 (2007)). Further, even if a plaintiff makes such a showing, the decision to grant equitable relief is still within the equitable discretion of the district court. Id.

AUSA Cullen and the government have suffered irreparable harm and will continue to suffer such harm if the defendant is not enjoined. The government cannot recover in full the significant costs it has expended in responding to defendant's frivolous filings and bringing suit to have the false financing statement declared invalid. Further, defendant has shown by his continued insistence on payment of the $180,000,000 he claims he is owed that he will not discontinue such actions in the future. Such claims tie up valuable federal resources and hinder the United States Attorney's Office and its employees in discharging their official duties. Further, these claims have potential to cloud title to property rightfully owned by AUSA Cullen. The government has shown that irreparable harm has occurred, and that further irreparable harm will occur absent the issuance of an injunction.

Similarly, the government has no adequate remedy at law. Defendant's false claims have

caused personal harm to AUSA Cullen by potentially clouding title to property, and any remedy short of preventing such abuses in the future would be inadequate. Defendant's actions, if allowed to continue, could interrupt and impede AUSA Cullen and other employees of the United States in discharging their official duties. The fact that defendant is currently incarcerated in a federal penitentiary further supports the fact that traditional forms of relief are inadequate and injunctive relief is necessary to stop this course of conduct.

The balance of the hardships lies heavily in favor of the government. If defendant is enjoined from filing further false financing statements without prior judicial approval, he will suffer no harm. However, if defendant is not enjoined, the government and its employees would likely suffer further irreparable harm. Therefore, the balance of the hardships favors the government.

Finally, the public interest would be served by a permanent injunction. The public interest will be served by prohibiting the harassment of government employees through frivolous filings. Such actions disrupt government employees in conducting their official duties and could negatively affect their claims to personal property. Further, the government's and the courts' time spent responding to such frivolous claims is a waste of valuable resources. Thus the public interest is served by issuance of a permanent injunction.

Since the government's claims meet the traditional test for issuance of a preliminary injunction, the Court will grant the government's motion for the injunctive relief it seeks.

**IV. CONCLUSION**

The government has presented sufficient evidence from which no reasonable jury could return a verdict for the defendant. Anderson, 477 U.S. at 248. Therefore, there is no genuine issue for trial, and judgment is appropriate as a matter of law. See Ricci, 129 S. Ct. at 2677.

**IT IS, THEREFORE, ORDERED** that:

1. The "UCC Financing Statement Amendment" (Doc. No. 7-3), and any associated or related documents, filed by or on behalf of Defendant Gordon Lee Miller under the Initial Financing Statement File # 2005-2131508-47.35 with the Kentucky Secretary of State, on May 21, 2008 and in the office of the Register of Deeds, Cleveland County, North Carolina, on July 15, 2008, recorded in Book 1557 on page 444, (hereinafter "False UCC Financing Statement"), and other similar and related documents, specifically Doc. Nos. 7-5, 7- 6, 7-8, 7-9, 7-10, 7-11, 7-12, 7-13, 7-14, 7-15, 7-16, 7-17, 7-18, and 7-19 [hereinafter "other similar and related documents"] are hereby **DECLARED INVALID, VOID, AND WITHOUT LEGAL EFFECT**;

2. Defendant Gordon Lee Miller who prepared, executed and filed the "False UCC Financing Statement" and other similar and related documents is hereby **DECLARED** to have engaged in misconduct with the purpose of harassing, obstructing, interfering with, and impeding an employee of the United States of America, AUSA Thomas T. Cullen, in retaliation for AUSA Cullen performing his official duties as a federal prosecutor in United States v. Gordon Lee Miller, Case No. 3:07CR59-RJC-1 (W.D.N.C.);

3. The invalid "False UCC Financing Statement" and other similar and related documents purporting to create a financial obligation against an employee of the United States **SHALL BE EXPUNGED** and otherwise **MARKED AS HAVING NO LEGAL EFFECT**;

4. The Cleveland County Clerk of Court and the Kentucky Secretary of State **SHALL EXPUNGE** and otherwise **MARK AS HAVING NO LEGAL EFFECT** the "False UCC Financing Statement filed with the Kentucky Secretary of State, on May 21, 2008 and in the office of the Register of Deeds, Cleveland County, North Carolina, on July 15, 2008;

5. Defendant Miller is permanently **ENJOINED** from preparing and filing, without prior judicial approval, UCC Financing Statements, liens and similar or related documents purporting to create a financial obligation against AUSA Cullen or against any officers and employees of the United States of America;

6. The Federal and North Carolina Clerks of Court and North Carolina County Registers of Deeds are **ENJOINED** from filing such liens and documents prepared or filed by Defendant Miller purporting to create a financial obligation, without appropriate court order;

7. The United States is **GRANTED** its costs incurred in the commencement and prosecution of this action including reasonable attorney fees, which costs are taxed to the Defendant Gordon Lee Miller; and

8. The Clerk of Court shall send a copy of the Judgment to the Bureau of Prisons and the federal correctional institution where Defendant Gordon Lee Miller resides for consideration of revocation of Defendant Miller's good time, visitation, and other privileges (e.g. telephone, television, or radio privileges) based upon this Court's finding that Defendant Miller has engaged in serious misconduct prejudicing and interfering with the administration of justice.

**SO ORDERED**.

Signed: January 28, 2010

Robert J. Conrad, Jr.
Chief United States District Judge